Thank you, Your Honor. May it please the Court, my name is James Todd Bennett, and I'm representing the petitioner in this case, Lattar-Singh Lakhwinder, and I would like to reserve five minutes of my time. I notice there's 15, so I would like to reserve five for rebuttal. Well, sure, reserve what you want, but again, watch your own time. I'm not going to stop you. Thank you, Your Honor. This is a multiple-issue case. Are these earphones hearing aids, or what are they? It's court-authorized. I have occasionally in some of the courtrooms, probably not in this one, but generally. I see. But it's not a recording device or anything? Right. I'm not listening to music. Okay. And I don't care about the music. I just don't want a separate recording device. Go ahead. Thank you, Your Honor. Threshold issue is whether or not the BIA erred in sustaining this particular offense as a crime of moral turpitude. And then there are additional issues as to the entry of the order under the regulatory scheme. And then there are additional issues as to the entry of the order under the regulatory scheme. Then whether or not the application of Immigration and Nationality Act Statute 209C is essentially ultra-virus in the way it was applied under the regular ‑‑ excuse me, the interim decision issued by the attorney general. Are one and ‑‑ two and three the same? No? They conflate, indeed, one another to a certain extent. They collapse into one another or other. And then finally, there's a ‑‑ based on Delgado, now that was just recently issued and is in the 28J letter, the final issues are whether or not the appropriate standard of a particularly serious crime was ever applied by the BIA as to the withholding and the withholding under the Convention Against Torture. And finally, the last issue being the discretion exercised under the restriction ‑‑ deferral of removal under the Convention Against Torture. Turning first to the crime of moral turpitude issue, the original argument in the brief was premised on Navarro-Lopez, which has now been vacated in part by Gila Montes de Oca. But not on this issue. No, not on whether it's a crime of moral turpitude, correct. But what I'm getting at is that the analytical mechanism by which we determine whether it's a crime of moral turpitude may have been modified by that decision. As the Court's aware, the concept of a crime of moral turpitude has been described as nebulous, and indeed it is. It's somewhat akin to past definitions of obscenity. I can't really define it, but I know it when I see it. Unlike the aggravated ‑‑ I'm not sure I even know it when I see it. Unlike the aggravated felony analysis that was in front of the Court in Gila, you don't have a precise statute defining a generic offense or, in the alternative, a Federal equivalent. But it's more than that.   And it's more than that. And I'm curious, I guess it would be helpful to know. It seems that Navarro-Lopez and others of our cases have kind of, insofar as there's any coherence to them at all, there seems to be two strands of moral turpitude cases, there are the fraud cases and then there are the vile, you know, base act cases. So why isn't this a vile base act? I mean, as vague as that is, why isn't this clearly it? Hmm. Based on the definition that survives under Navarro-Lopez, and I think the majority in Navarro-Lopez basically said that it has to be a base vile act standard. Or fraud. Fraud is part of it. Whereas in the concurring opinion. But the concurring opinion was the majority of the court. Okay. At any rate, the analytical matrix in this case, originally I was arguing it was a missing element case. And to me, the missing element is essentially another way of saying it's not a crime of moral turpitude when you apply it to this particular standard, because you're applying one single standard to any statute that comes in front of the court, or excuse me, any conviction that comes in front of the court. And if this particular offense, Penal Code 422, is nebulous meets a nebulous, if you will, the statute essentially requires to commit the offense a willful threat, which is defined specifically by California law as not an intent to commit the offense, but simply committing the act. In other words, making the statement. Secondly, there has to be a crime of death or great bodily injury as part of the threat. It needs to have the specific intent that it be taken as a threat. So we have two levels of scienter as you descend through the statute. And then finally, which is communicated, and then there is a fact-specific requirement as the content and circumstances. So you have this statute with descending levels of scienter and factual findings. The reason I would submit that this case is not a categorical crime of moral turpitude, number one, willful as defined in the State of California under Penal Code 7.1 doesn't have an evil intent. It simply means I willful. I'm going to make this utterance. There is no – it's not an excuse. That may be true. The willfulness, of course, demonstrates that it is a deliberate act and directed towards the victim, but why isn't any of that cured by the specific intent requirement in the statute? The specific intent requirement is that the statement be taken as a threat. Right. That is – they were required to show that Mr. Singh specifically intended when he made the threat, and he made the threat willfully, that is very deliberately, and that he specifically intended that it be taken as a threat and that she fear for her life or for her bodily integrity. Looking at the statute itself as to the specific intent, this statute is somewhat analogous to the conspiracy problem that you have under 371 when you're looking at a – excuse me, not 371, but at any rate, the conspiracy issue under the same kind of deportation proceeding. In conspiracy, the crime has to be the – what you're conspiring to commit has to be a crime of moral turpitude. In this particular statute, it's analogous in the sense that the crime that's being advocated would necessarily have to be a crime of moral turpitude. Now, can you violate the statute and make a threat of a non-turpitudinous crime under the circumstances? But this is a turpitude. Let's start there. If he in fact – my understanding of the assault cases is that there are some circumstances in which batteries and assaults are not crimes of moral turpitude, but that they are – and I don't know exactly where they – where it stops, but – and it's never been very well explained, but at least if there's a murder, I gather that's a crime of moral turpitude. And if there's a serious bodily injury, an assault, I think there's case law saying that's a crime of moral turpitude. Is that right? I believe that 241A.1 would be a crime of moral turpitude. However, if you have a, for example, a situation where there's an utterance by, say, a boyfriend or girlfriend, boyfriend's jealous, says, I'm going to punch you in the nose, well, that implicates a whole range of statutory offenses. But specifically, if it implicates like 243E, you've got essentially what is not a crime of moral turpitude. You've made a specific – You've made a specific intent to commit serious bodily injury or death. Punching somebody in the nose would be such a threat. A serious – well, I don't know if that's true or not. Do you have case law saying that? But in order to qualify under 422, there would – the jury would have to be – would have to believe that there was a specific intent to cause somebody to think that there was an immediate prospect of execution of the threat and that the threat was received by the victim and caused that person reasonably to be in sustained fear for his or her own safety. So, I mean, there's an immediacy to all of this that the jury actually has to make a finding about both what the person who threatens intends and how the person who was threatened received it. So a threat – a threat to punch somebody in the nose may or may not be taken seriously. If it was intended seriously and it was received seriously and they find specific intent, why isn't that a crime involving moral turpitude? Because if the offense were carried out, it would not necessarily be a crime of moral turpitude. And what case law is there that says if you're committed battery of punching somebody in the nose – the battery cases, as I recall, basically go off on the fact that battery can be a least touching and it can have, you know, no injurious effect at all. But if, in fact, you punch somebody – in fact, if the crime is punching somebody in the nose, is that – is there a case law saying that's not a crime of moral turpitude? In other words, not over – not that the battery and assault statutes are overbroad because they have – they encompass a very minor kind of unwanted touching. But if you actually – if the crime is actually punching somebody in the nose, is that not a crime of moral turpitude? I think there is a board-precedented decision. I don't have it with me. And it wasn't cited in Nabris. But I do believe there's one that takes you through the analysis. What they do in that circumstance is they apply the modified catechorical approach. Look, it could or could not be. We'll do a modified. But that's because the battery statute is, in fact, as Judge Berzon points out, overbroad. That's because there are – there are batteries that are offensive touchings that were perhaps not intended as offensive touchings. And therefore, there are circumstances in which a battery would not be a crime involving moral turpitude. That's why the – that's why the BIA would revert to the – to the modified categorical approach. Right. And if they apply the modified categorical approach to the statute, I think it poses the same problem. Well, I'm asking you, if you have any cases that hold that a battery or assault that – in which the crime is limited to batteries and assaults that cause serious bodily injury or death are not crimes of moral turpitude, that's what I'd like to see. I do not have any case law with me, but I could – I understand that, in terms of submitting it. It would be helpful to you. As I understand it, the California courts have declared that a violation of 422 is a crime involving moral turpitude. Is there a distinction between a CIMT in California and the CIMT definition that we're employing? Those statutes – those cases cited by opposing counsel essentially involve impeaching a witness. There's no case law on point that I'm aware of, that I have seen, that specifically states that it's a crime of moral turpitude per se. The concept doesn't really exist in – under the criminal laws of the State of California, but it does for the purposes of impeaching and introducing a conviction. Why would that be – why would that distinction be important? The standard – I'm sorry, Your Honor. The standard also is broader, incorporates a much broader definition as to what a crime of moral turpitude is. Also, there are variations in it. I think they're cited in the brief, the opening brief, as to the variations of the – excuse me, in the reply brief, rather, as to the variations. You're very low on your time. You want to reserve five minutes. You have a choice now of addressing one of your other issues or sitting down and rebutting later. Just briefly, I would submit that the 209C issue is essentially – I must say, I absolutely do not understand what you're saying there. Is – does it boil down to the fact that once he didn't put this in his oral opinion, he had to get everybody back in the room and say it all orally, or else he couldn't terminate the asylum? Is that your basic intention? As to the statute, as to the regulations that are binding on the immigration judge, he's got to issue the decision as part of the order. And in this particular instance, he simply – he got a remand, which would have cured – cured all – basically cured all the other procedural errors. But then instead of issuing another – a formal decision, he just simply issues a memorandum, which is tantamount to the same thing that he did before, which was just issuing a paper summary decision stating terminate it. Whatever you wanted to say, I'm going to read back here. Your original objection is we didn't have a chance to say anything, but now you had a chance to say something. True. But the entry of the order itself, that – and the termination order itself are also issues at stake that underlie the problem with the 209C order. I'd like to reserve one minute, if I could. Okay.  Go ahead.  Thank you. May it please the Court. Puneet Jima for the respondent, the Attorney General. Petitioner was granted asylum in 1993. In 2002, he was convicted of threats of intent to terrorize, which the Board properly found was a particularly serious crime and a crime involving moral turpitude. The Board properly terminated his asylum status after fully and thoroughly considering all of the evidence and all of his arguments, and then rejected his applications for relief, for asylum withholding of removal, cap deferral, adjustment of status, and a waiver of inadmissibility. The petitioner claims that asylum termination was not proper. Petitioner is wrong, because the Board remanded to the immigration judge to fully state the justifications for asylum termination. And the immigration judge fully laid out that his conviction was a crime of violence and an aggravated felony, which is the basis for termination, and that it was a particularly serious crime. Both were proper justifications for terminating his asylum status. Also, petitioner claims that he is prejudiced, but he hasn't identified any prejudice, even if there were any defect in the asylum termination. Petitioner had an opportunity to respond to the notice of intent to terminate when that was issued in January 5, 2005. And on 361 of the record, petitioner waived his opportunity to respond to the notice of intent to terminate. And even if there had been any alleged defect, it was cured by the remand to the immigration judge. Counsel, I'd like to take you back to the question of the crime involving moral turpitude. Is it clear that the IJ or the Board relied on or found that Section 422 was categorically a crime involving moral turpitude? Yes, they did, Your Honor. Okay. Now, is there any difference between the standards for crime involving moral turpitude for the BIA and the California court's determination that 422 is a crime involving moral turpitude? There are not. The definitions are the exact same. Has anybody ‑‑ Have we ever ‑‑ it seems to me this argument is made all the time and we've never adopted it, that is, that a California determination of what's a crime of moral turpitude is somehow binding or even supportive of a finding under the INA statute which is used for completely different purposes. It is used for completely different purposes, but that's because moral turpitude isn't an element of any crime in the State statute. And yet ‑‑ And it's certainly a vague and general term, and it isn't self-evident that they mean the same thing. Has the Board ever in a published decision taken the position that they ‑‑ you can look at it, but suppose California says one thing and Nevada says another thing. Then what? Then you look at the State interpretation of its own statute. Why? Because they are the best interpreters of their own statute. But ‑‑ Probably unamended. I mean, suppose the statutes are both exactly the same, but they have different notions about what's a crime of moral turpitude. I don't know of States that have different notions of crime involving moral turpitude. Though it is a vague and nebulous standard, it is fairly standard. It is across the board. Is there any BIA case, published opinion, saying that we rely on State determinations for this? Not that I'm aware of. Is there any instance in which this Court's ever done it? And this Court relying on State court decisions? Yes. Absolutely. Galeano Mendoza, which is cited in our brief. And that shows that the courts first look to State court interpretations of the State statute. In Ray Ajami, a board decision has also found that the intentional transmission of threats can be ‑‑ it shows ‑‑ Doesn't there have to be a uniform Federal understanding of what a CIMT is? I believe that there ‑‑ to the extent that it's possible, there is. But how can we go about relying on how different States apply a concept they've developed for a completely different purpose? Well, we rely on the board decision as well. The board has discretion to interpret its laws. I understand that. I'm not asking you that. I'm asking you why the board can or why we should rely on the determination of 50 States with regard to a completely amorphous concept used for completely different purposes in State law and in Federal law. Well, the finding that crime of moral turpitude, that State convictions can be crime of moral turpitudes is not in question. A uniform definition is up to the ‑‑ it's still in the case by case basis. Am I wrong that in common law the concept of crime of moral turpitude was focused on fraudulent ‑‑ on something that implicated one's truth‑telling function. So, therefore, I tended to focus on fraudulent‑like considerations. I believe that was one aspect. And the other were crimes that showed baseness, vileness. Well, I'm not sure that that was in a later development. Do you know whether that's true? I thought originally the notion had to do with some reason to believe the person was a liar. I mean, you could have perfectly honest murderers. I'm not entirely sure of that, but it's quite possible. But it has developed, and it's very well developed, that crime showing a baseness, vileness, or moral turpitude. Well, I understand that under Federal law. I'm just questioning whether it's uniformly true in the States. I doubt it. So we would have ‑‑ I don't know the answer, but I doubt it. We're going to end up in a nonuniform situation. I mean, moral depravity is never an element of a crime, so it wouldn't show up in State statutes. It's generally used for other purposes. And for Federal immigration law, when there is a State interpretation of that, we do look to the State, its interpretation of those statutes. But we would want to assure ourselves that California was using the same criteria that we were using to determine that its statute was a crime involving moral turpitude. And it was. What would be more useful for us, I think more persuasive to us, is if we had a California decision saying that 422 was not a crime involving moral turpitude, in which case we would probably feel bound by that if California had decided itself that it was not a crime involving moral turpitude. So you would feel more persuaded by it saying it was not a CIMC rather than it is. That's right. And it would be more useful for us sort of excluding things from being a crime involving moral turpitude. That is, I don't think that we were – I'm not sure that we are bound by California's findings that it's a crime involving moral turpitude. We might find it persuasive. Exactly. We might find it useful. Right. But we might not feel – we're certainly not bound by that. But we might feel bound by finding that California courts have made that a particular statute was not a crime involving moral turpitude. I understand. But in this case, the California courts, where they've consistently said that it is a crime of moral turpitude, is also greatly persuasive, and that should be taken into account. What about the question that I asked before? Is there a case law – what is the – to be specific, if this threat had been carried out, what is the case law that says that it would have been a crime of moral turpitude? If it had been carried out rather than just having been a threat. I mean, you know, he – instead of threatening to punch her in the nose, he punched her in the nose and hurt her. Had he – whether he had caused death or grave bodily injury. No. Whether he had done something likely to cause death or grave bodily injury. Well, I believe the threat is to cause the death or grave bodily injury. So if he had carried it out, he would have had to intend to cause that. Okay. Well, what is the case law on – because batteries and assaults are not necessarily crimes of moral turpitude. Right. Battery isn't necessarily because it includes a touching that would cause injury. What about a battery, a more specific battery that does have a – either an actual injury or a possibility of serious public – what is the case law on this? I don't know at the moment. It's kind of critical, isn't it? I don't know that it is, because this statute specifically is only about the threat. It's the threat to cause. You think it could be a crime of moral turpitude to threaten something that wasn't a crime of moral turpitude to do? No, that I don't. Well, that's what I'm trying to find out, whether it would be a crime of moral turpitude to do it. If the Court would like supplemental briefing on that, I'm happy to do that. I believe causing death is certainly a crime of moral turpitude. Causing grave bodily injury, I'm fairly sure, is also a crime of moral turpitude. I don't at the moment have the case law on that. My recollection is that it's a little murky at what point the case is cut off. In other words, how – there is some strain of cases that seem to say that you look to the actual injury or death, but how bad the injury has to be, I don't remember. If the Court would like supplemental briefing on that line and where that line stands, I'm happy to provide it. In this case, however, even if the Court were to find that this is not a crime involving moral turpitude, petitioner is still removable because asylum was properly terminated and the second charge of inadmissibility was that he's present without being admitted. And that remains, whether this is a crime of moral turpitude or not, although the Board correctly held that it is. The Board also correctly held that this is a particularly serious crime, relying on the proper standards under in re francescu, which requires considering the nature of the conviction, second, the facts and circumstances underlying the conviction, and third, the type of sentence imposed. Those are the exact factors that the agency looked at. They considered the fact that his conviction was towards the high end, that the facts and circumstances underlying it were the fact that he had a knife, there was a child involved, and that he was intoxicated. So the Board properly held that it was a particularly serious crime. This Court in Anaya-Ortiz has upheld that structure for determining a particularly serious crime. And the Board also properly denied asylum and withholding based on the particularly serious crime bar and, furthermore, for two reasons, because they found that conditions in India had changed and that, third, he could relocate within India. So are you suggesting that we don't have to decide the crime of moral turpitude question? You could choose to not decide it. Although the Board was correct in finding that it was a crime of moral turpitude, even if it's not, asylum was properly terminated and he's still inadmissible. The ---- We could decide that even though the Board relied on the CIMT basis? The Board did not. The Board relied on the CIMT to not to terminate his asylum. His asylum termination was based on the fact that his conviction is an aggravated felony crime of violence. And that hasn't been challenged. That has been found in this Court in Rosales-Rosales. So what did it rely on, the CIMT? The CIMT was a second charge of inadmissibility. Can you show me where and how we know that that's what the Board relied on? For which aspect? The termination? Yeah, I think we're trying to get to the question. We've got some very interesting questions under the CIMT, but I think we're trying to figure out does the government have an alternate route for affirming the BIA? Yes. On page 2 of the AR, the charge is that he's present without being admitted. Page 3, the Board goes through the termination of asylum. Where the termination of asylum is proper, as it was here, because it was done according to the regulations and the case law, then his status reverts to being present without being admitted. He hasn't challenged that finding and thus is waived. But the BIA doesn't actually say that, does it? I'm sorry? The BIA doesn't actually say that. You're telling us that, but that wasn't the Board's reasoning. What does the BIA not say? The BIA doesn't say that he is present without, because the asylum was terminated, he's now present without being admitted, and that is the reason why or a reason why he can be removed. They do uphold the charge of inadmissibility based on being present without being admitted, and they agree with that. On page 2, they go through the charges. I understand that's the charges, but where are they upholding, without regard to the CIMT? Well, they uphold the termination of asylum on page 3. Where he has no status, he's present without being admitted. Then why do they discuss the CIMT at all? They obviously seem to think it matters. I'm sorry? They do discuss the CIMT on page, on the first paragraph, page 3. Why isn't it a fair inference that they were upholding that ground of inadmissibility and didn't have to get to, or of removal and didn't get to any other one? The termination of asylum has that effect. Then why did they have to get to the CIMT? It's an alternative finding that the immigration judge made. They chose to reach it. They didn't have to, but they chose to. Is the CIMT a ground of inadmissibility or a ground of removal? In this case, it's a ground of inadmissibility. It can be a ground of removal, but that would be a ground of inadmissibility. All they needed was that once the asylum was terminated, he was there. They only needed one ground of inadmissibility, but he was charged with two grounds of inadmissibility, and both were upheld. But the second one isn't a ground of inadmissibility. It's just that he was admitted without – he came without authorization and he – once the asylum is terminated, he has no business being here, essentially. It's not a ground of inadmissibility, is it? Permission to respond, Your Honor, is the amount of time. Yes, that's fine. It is a ground of inadmissibility because he's present without being admitted, and thus he is not eligible to be admitted. It's a ground of removability. Right. It's not a ground of inadmissibility. It's a language issue. Removal is both inadmissibility and removal. That section of the statute is called inadmissibility. Anyway, this is not your fault. It's the statute's fault. Okay. All right. Thank you very much. Thank you for a useful argument. Just briefly, Your Honor, on the – Does the CIMT issue matter? It does. Tell me why. If he was not sustained, he would have been eligible potentially for other forms of relief. I mean, he could have applied for a 10-year green card, although there is a conviction record, but it's – But it was an aggravated felony anyway. The – that is true. All right. So given that, does the CIMT matter? It would matter in this sense, Your Honor, that the Board's decision is not premised on the charge of inadmissibility. What the Board's decision is premised on is that this is a CMT, and then they proceed to go through the applications for relief. They never specifically address the issue of inadmissibility. So the parameters of the decision that's in front of the court administratively is strictly a CMT analysis. It's premised on it, and everything in this case, basically, everything in the decision, rather, is focused entirely on the events surrounding that conviction. All the other – any other convictions, any other claims of relief, the other charge of removability are not addressed by the Board. Except what about the particularly serious crime part? I'm sorry, Your Honor? What about the particularly serious crime? Does that obviate the relevance of the CIMT? Here's the problem with this Board's particularly serious crime. I see I'm out of time, but just briefly. The Board never applies the standard. The immigration judge conflates the matter-of-gene standard, which is a completely different administrative law decision standard, and then conflates it into his analysis as to why Mr. Singh's not eligible for withholding. That's not what I was asking you. If the particularly serious crime thing, finding what were upheld, does the CIMT still matter? I'm trying to figure out how layered this thing is. What's really relevant to the bottom line? The particularly serious crime issue was upheld all the way through for all forms of relief, and then he was found to be not in. But he couldn't be – but he wouldn't be inadmissible because of particularly serious crime, would he? No. So you still need the CIMT or something on the – for the removal? On this decision, yes, the way they've drafted it. All right. Thank you very much. Thank you, Your Honor. This is a very complicated case, and thank you both for your help. Ladder-Singh v. Holder is submitted.
judges: Whelan, Berzon, Bybee